ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Blue Rock Structures, Inc. | )    ASBCA No. 62127 |
| | ) |
| Under Contract No. N40085-16-D-6300 | ) |

APPEARANCES FOR THE APPELLANT:          Mr. Brent Hartness
                                                                        President
                                                                    Mr. Chris Lawson
                                                                        Vice President of Construction

APPEARANCES FOR THE GOVERNMENT:    Craig D. Jensen, Esq.
                                                                        Navy Chief Trial Attorney
                                                                    Daniel J. Monahan, Esq.
                                                                        Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE EYESTER
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

Blue Rock Structures, Inc. (Blue Rock or appellant) appeals a contracting officer's final decision (COFD) denying its claim of $73,027.34 for additional steel and 21 days of additional time as a result of a differing site condition for the installation of translucent roof panels on Hanger 250 at Marine Corps Air Station, Cherry Point, North Carolina. The Department of the Navy (Navy or government) filed a motion for summary judgment arguing that the appellant has failed to demonstrate any material facts in dispute to demonstrate that a differing site condition was the sole cause of the need for additional steel and time for installation of the panels. Appellant opposes the motion, arguing that the existing steel in the hangar varied in straightness from the design and was insufficient for fastening the panels. Because we find that a material fact is in dispute, the motion is denied.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

1. On December 18, 2015, the Navy awarded General Multiple Award Construction Contract (MACC) No. N40085-16-D-6300 to Blue Rock (R4, tab 2 at 10, 12).[1] The purpose of the MACC was to provide a range of general construction services that included new construction, demolition, repair, and alteration of buildings, systems and infrastructure (R4, tab 2 at 25).

---

[1] Citations to the Rule 4 file are to the government's Bates-stamped numbers. Citations to the briefs are to the PDF page numbers.

2. All delivery or task orders issued pursuant to the MACC were subject to the MACC's terms and conditions (R4, tab 2 at 44). As pertinent here, the MACC incorporated by reference Federal Acquisition Regulation (FAR) 52.233-1, DISPUTES (May 2014); FAR 52.236-2, DIFFERING SITE CONDITIONS (APR 1984); and FAR 52.243-4, CHANGES (JUN 2007) (R4, tab 2 at 30). FAR 52.236-2, DIFFERING SITE CONDITIONS (APR 1984), states, in pertinent part:

> (a) The Contractor shall promptly, and before the conditions are disturbed, give a written notice to the Contracting Officer of-
>
> > (1) Subsurface or latent physical conditions at the site which differ materially from those indicated in this contract; or
> > (2) Unknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract.
>
> (b) The Contracting Officer shall investigate the site conditions promptly after receiving the notice. If the conditions do materially so differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performing any part of the work under this contract, whether or not changed as a result of the conditions, an equitable adjustment shall be made under this clause and the contract modified in writing accordingly.

3. On October 28, 2015, the Navy issued a solicitation for repairs and improvements to Hangar 250 to selected MACC holders, including Blue Rock (R4, tab 1 at 1-2). The solicitation included specifications and drawings for the project as attachments (R4, tab 1 at 3).

4. On November 30, 2016, the Navy issued fixed-priced Task Order No. 0005 to Blue Rock for $13,683,510 for repairs and improvements to Hangar 250 in accordance with the issued solicitation, as amended (R4, tab 10 at 1260-62, 1268, tab 11). The agency ultimately issued 13 modifications, which increased the task order award amount to $15,533,529.08 and established a completion date of December 13, 2019 (R4, tab 31 at 1480).

5.  As part of the renovation, Blue Rock was to provide a translucent fiberglass skylight system in the hangar (R4, tab 3 at 75, 608-14).  The specifications, prepared by the agency's Designer of Record, DJG, Inc. (DJG), stated:

> Field verify all submitted opening sizes, dimensions and tolerances . . . .  The installer shall examine [the] area of installation to verify readiness of site conditions and to notify the Contractor about any defects requiring correction.  Verify when structural support is ready to receive all specified work and to convene a pre-installation conference, if approved by the Contracting Officer, including the Contractor, skylight installer and all parties directly affecting and affected by the specified work.  Do not commence work until conditions are satisfactory.

In addition, the specifications provided that Blue Rock shall "[e]rect [the] translucent skylight system in accordance with the approved shop drawings supplied by the manufacturer."  (R4, tab 3 at 614)

6.  The specifications also incorporated by reference several drawings, including S-301 (Shop Roof) and S-402 (Sections & Details) (R4, tab 3 at 65).

7.  Blue Rock subcontracted work to Carolina Architectural Products, Inc. (Carolina).  Carolina used Kalwall Corporation (Kalwall) as its supplier for the translucent panels.  (Gov't mot., ex. 1 at 28-30)

8.  Around March 2017, shop drawings prepared by Kalwall and reviewed by Carolina were submitted to DJG.  DJG signed off on the shop drawing, stating "no exception taken," on April 28, 2017 (R4, tab 14).

9.  On July 20, 2018, Carolina sent a letter to Blue Rock and advised the following:

> [This is p]er our previous discussions related to the additional support that is required under the Kalwall system.  During the field verification process, it was determined that the alignment of the existing steel is off, varying from ½" to 1", enough that additional support is necessary to ensure that there is adequate structure under the Kalwall system to support it and to which to attach.
>
> The "waviness" of the existing steel will make it very difficult to install the Kalwall system and be certain that the

system is adequately supported. The existing support system is a 8" x 2" steel channel on edge, with the 2" wide flange being the support surface for the Kalwall system. A variance of this degree will be detrimental to the installation of the Kalwall system, weather tightness and the system warranties. It will be necessary to determine an effective method of increasing the bearing surface for the Kalwall system. A minimum bearing surface of 3½" will be necessary to allow for the inconsistencies in the existing structure.

(R4, tab 22 at 1328)

10. On July 23, 2018, Blue Rock submitted a request for information (RFI) to the agency stating:

> During our site survey in order to make the shop drawings for the Translucent Panels for the submittal. . . we found that the existing Structural Supports vary from ½["] to 1["] in the span. The contractor is indicating that he needs to add additional support to make his system work correctly. Since the new Roof System is prefab at the factory field modifications cannot be done in the field. See attached for more information and sketch.
>
> I have requested a proposal from a third party structural steel fabricator to provide and install this. I believe that this is a changed condition to the contract.

(R4, tab 22 at 1327)

11. On July 24, 2018, the agency responded to the RFI and stated it was "unclear why waviness would effect the fastening of the panels." The agency further stated that per the shop drawings, "the panels are set perpendicular to the purlins" and therefore, a ½" or 1" difference would not matter. Further, the agency stated that "Kalwall was involved with the project during design and concern for the bearing was never expressed." The agency requested photos of the existing waviness. (R4, tab 23 at 1330)

12. In another response to RFI 73, also dated July 24, 2018, the government responded:

> Constant communication occurred between DJG and Kalwall during the design of the translucent panel system. Kalwall assisted in the development of the details and specifications

4

with our Structural Engineer and Architect. It is unclear why Kalwall never expressed concern of the purlin spacing or bearing width during the design, but now raises the concern. If Kalwall requires 3.5 inches for the bearing surface, it appears that the steel will need to be added.

(R4, tab 26 at 1465)

13. In a letter from Kalwall to Carolina, dated August 2, 2018, Kalwall explained: "Our standard recommended minimum bearing surface for supports (by others) at our half-ridge and overlap detail is 3½". There appears to have been some misunderstanding on this project; however, a 2" bearing surface is not sufficient for these details" (R4, tab 26 at 1461).

14. In yet another response to RFI 73, dated August 31, 2018, the government stated:

> The attached [August 2, 2018 letter from Kalwall] identifies that 3.5-inches is required for bearing of the proposed panel system. The construction documents clearly show the size of the channel as a C8x11.5 on Sheet S-301 and S-402. This channel is only 2-inches wide. With this information the Contractor had all the information required to identif[y] they did not have enough bearing width for their proposed panel system prior to bidding and therefore would require additional support, such as a steel plate. . . . It appears that even if the purlins were straight that they would not meet the fastening requirement, and though the waviness is unforeseen, it appears it does not pertain [to] the need for the steel plate. . . . Kalwall was involved with the project during design, into construction documents and reviewed the design details and specifications prior to bidding. At no time was concern expressed for the bearing width.

(R4, tab 26 at 1462) Contrary to the government's conclusion, we find that the Kalwall letter, especially when read in conjunction with the communication from Carolina regarding the field verification process, does not clearly state that 3½" was always required for the proposed panel system.

15. On September 28, 2018, Blue Rock emailed the Navy construction manager and stated:

Thanks for providing information for a possible other manufacturer for the [Translucent] Panels for the above referenced project but this company does not meet the specifications.

If you look at the [Kalwall] website the specs are almost word for word so my position stands that this spec was written around [the Kalwall] product.

(R4, tab 26 at 1466)

16. On October 16, 2018, the Navy construction manager emailed Blue Rock and stated that the structural engineer concluded that the weight of the additional steel required for the Kalwall system can be supported by the existing structure (R4, tab 26 at 1466).

17. On October 24, 2018, Blue Rock submitted a request for equitable adjustment (REA) to the contracting officer requesting $73,027.34 for the cost of the additional steel and additional time to install the steel. Blue Rock stated the requirement for additional steel was due to "an error and omission from the drawings on the part of the designer of record." (R4, tab 26 at 1457) The government denied the REA on March 6, 2019 (R4, tab 29).

18. On March 6, 2019, Blue Rock submitted a request for a COFD on the denial of its REA. Blue Rock stated "that the [designer of record] misunderstood or did not know the requirements for the system they intended for this project." Blue Rock further requested information on additional manufacturers that the agency believed would meet the specifications and which did not require the additional steel requirements. (R4, tab 30)

19. The contracting officer issued a COFD on June 26, 2019, and denied Blue Rock's claim, stating:

The [designer of record] did not make a mistake; Blue Rock's own subcontractor did. The translucent panel system submitted by Blue Rock was improperly designed by Kalwall for the site-specific application of this project and subsequent design changes to meet the field-verified measurements is the responsibility of Blue Rock and its subcontractors.

(R4, tab 33 at 1482-83) This timely appeal followed.

6

The government has moved for summary judgment, arguing that there is no material issue of fact in dispute and therefore it is entitled to judgment as a matter of law. Specifically, the government contends that Blue Rock was required to install translucent roof panels and the drawings incorporated by reference into the task order award showed the bearing surface for the translucent roof panels was 2¼" (gov't mot. at 1-3). The government further argues that the minimum required bearing surface for the translucent panels that Blue Rock intended to install--the Kalwall translucent panels--was 3½". Therefore, according to the government, the bearing surface identified in the drawings never would have been sufficient to support the Kalwall system, regardless of any "waviness." (Gov't mot. at 5, 11) The government also argues that there were other translucent panel manufacturers available, but Blue Rock made no effort, other than looking at the website of one manufacturer, to find them (gov't mot. at 6, 11-12). According to the government, Blue Rock cannot demonstrate that a differing site condition was the sole cause of the need for additional steel and time for installation of the panels.

Blue Rock argues that there were discrepancies in the drawings provided by the government which were not discovered until the existing bearing surfaces (or steel supports) were exposed during the demolition phase (app. reply at 1-3). Specifically, Blue Rock contends that the existing bearing surface for the translucent panels was not straight, but wavy, and varied by 1-2" (app. reply at 1-2).[2] Blue Rock further argues that as a result of the waviness, the steel surface did not provide sufficient bearing for a method of fastening, and the panel installation could not be accomplished with any panel manufacturer (app. reply at 2).

We will grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A non-movant seeking to defeat summary judgment must provide sufficient evidence supporting the claimed factual dispute to require a judge to resolve the parties' differing versions of the truth at trial. *See id.* at 248-49 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). When considering motions for summary judgment, the evidence produced by the non-moving party is to be believed and all justifiable inferences are drawn in its favor. *Id.* at 255.

---

[2] Blue Rock states that the structural supports had a variance of ½" to 1" on either side which would equate to 1" to 2" total variance (app. sur-reply at 2).

We conclude there is a genuine dispute as to whether the additional steel was needed because of a differing site condition. At this time, the crux of the dispute appears to center around the August 2, 2018 letter from Kalwall to Carolina, in which Kalwall stated:

> Our standard recommended minimum bearing surface for supports (by others) at our half-ridge and overlap detail is 3½". There appears to have been some misunderstanding on this project; however, a 2" bearing surface is not sufficient for these details.

(R4, tab 26 at 1461) The Navy contends that this letter confirms the Kalwall translucent panel system could never have been installed on the hangar because it required a 3½" bearing surface for support and the Navy drawings clearly showed the surface was only 2¼".[3] The appellant contends this letter, along with the letter from the installer (Carolina), show that the Kalwall translucent panels system could not be installed because the waviness of the surface required an increase in the surface area of 3½" to allow for the inconsistencies in the structure (app. reply at 4).

The Navy has failed to demonstrate that the Kalwall letter, which is not a model of clarity, or any other document, proves its case. As noted, we find that the Kalwall letter, especially when read in conjunction with the communication from Carolina, does not clearly state that 3½" was always required for the proposed panel system. Accordingly, Blue Rock has provided sufficient evidence supporting the factual dispute here, such that a hearing is needed to resolve the parties' differing versions of the issue. Therefore, the government's motion for summary judgment is not appropriate at this time.

---

[3] As support for its motion, the government cites to a deposition conducted on March 6, 2020, with Christopher Lawson who was the superintendent for Blue Rock for this project. According to the government, Mr. Lawson testified that the Kalwall letter "means that the design of [the] Kalwall translucent panel system would prevent its use with [a] 2 inch bearing surface" (gov't mot. at 5-6, 11, *citing* ex. 1 at 40-42). We do not agree that the deposition is so clear on this point, especially when Mr. Lawson later testifies that when Blue Rock "found out that this – the C-channel was not in alignment, we came up with a solution" (gov't mot., ex. 1 at 42). Blue Rock itself states that the government's conclusions are a "gross misrepresentation of the Kalwall letter and Mr. Lawson's Statement" (app. reply at 4).

## CONCLUSION

For the reasons stated above, the government's motion for summary judgment is denied.

Dated:  October 21, 2021

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62127, Appeal of Blue Rock Structures, Inc., rendered in conformance with the Board's Charter.

Dated:  October 21, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals